**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MORE THAN GOURMET, INC., | ) | CASE NO.  5:13CV1966 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| CHRISTIAN POTIER, S.A., | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

In this contract dispute, defendant Christian Potier, S.A. ("defendant" or "Potier") has moved for judgment on the pleadings with respect to the request of plaintiff More Than Gourmet, Inc. ("plaintiff" or "MTG") for incidental and consequential damages. (Doc. No. 9.) MTG opposes the motion (Doc. No. 12), and Potier has filed a reply (Doc. No. 13).

## I.  BACKGROUND

MTG is an Ohio corporation that "manufactures, distributes and sells culinary sauces and stocks to high-end grocery stores across the United States." (Complaint, Doc. No. 1 ¶¶ 1, 6.) Potier is a French corporation "engaged in the business of the manufacture and sale of French stocks and sauces." (*Id.* ¶¶ 2, 7.) "On or about August 22, 2012," the parties entered into an agreement whereby Potier was to

manufacture certain culinary products that would be "co-branded" with MTG and sold to MTG for sale and distribution in the United States. (*Id.* ¶¶ 8, 9; Aug. 22, 2012 Agreement, Doc. No. 1-3.) Among the co-branded sauces Potier was to manufacture for MTG—and central to the present lawsuit—was a red wine shallot sauce to be used in beef dishes. (Doc. No. 1 ¶ 10.)

As part of the parties' agreement, Potier was to supply MTG with sauces that both met the specific needs of MTG and complied with all federal and state laws governing the distribution of such food items. Specifically, Section 4.1 of agreement provides, in relevant part:

**4. REPRESENTATIONS AND WARRANTIES.**

4.1 Potier further represents that, as of the date Co-Branded Products are delivered to MTG, Co-Branded Products shall be in compliance with the specifications provided by Potier to MTG and shall be in compliance with all local, state and federal laws, regulations, ordinances, rules and procedures, including those of the United States FDA and USDA.

Potier, at its sole option and as MTG's sole remedy, will replace any of the Co-Branded Products which fail to meet the specifications due to defects; provided, however, if Potier determines that replacement is not commercially practicable, Potier shall issue a credit in favor of MTG in an amount not to exceed the purchase price of the Product. All claims for breach of this warranty must be made to Potier within thirty (30) days after the date of shipment of the Product to which the claim relates and must be returned at MTG's expense to Seller's plant in accordance with Potier's written material return authorization and instructions. Potier's warranty shall extend only to MTG from Potier. Potier's warranty does not cover the effects of abuse of the Co-Branded Products or the effects improper storage or handling of the Co-Branded Products after Potier has relinquished possession [o]f the Co-Branded Products.

EXCEPT FOR THE EXPRESS WARRANTY AS DESCRIBED ABOVE, THERE ARE NO OTHER WARRANTIES OR GUARANTEES, EITHER EXPRESS OR IMPLIED, WRITTEN, ORAL OR ARISING UNDER CUSTOM OF TRADE INCLUDING, WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY AND

2

> FITNESS FOR ANY PARTICULAR PURPOSE. NO WARRANTIES OR REPRESENTATIONS AT ANY TIME MADE BY ANY REPRESENTATIVE OF POTIER SHALL BE EFFECTIVE TO VARY OR EXPAND THE ABOVE-REFERENCED EXPRESS WARRANTY OR ANY TERMS HEREOF.

(Doc. No. 1-3 at 19-20, all alterations and capitalization in original.) The agreement also includes a section addressing further limitations of damages, which goes to the heart of the present dispute. Section 4.3 provides:

> 4.3 The parties agree that each party shall be responsible for its own respective consequential, incidental, special, and punitive damages, if any, and shall not hold the other party responsible for such damages.

(*Id*. at 20.)

Also relevant to the present motion are the dueling indemnification clauses in the agreement. With respect to Potier's duty to indemnify, the agreement provides:

> 13.1 Unless caused by MTG's breach of this Agreement or caused by the actions or negligent omissions of MTG or its agents, employees or contractors, Potier shall indemnify, save harmless, and defend, MTG against any and all claims, loss, damages, liabilities, costs, and expenses, including reasonable attorneys' fees, to the extent resulting from or arising out of any breach by Potier of this Agreement or to the extent resulting from or arising out of any negligent or wrongful act or omission of Potier in the performance of this Agreement or the manufacture of the Product.

(*Id*. at 25.)

"In or around November 2012, the Animal and Plant Health Inspection Service of the United States Department of Agriculture ("USDA") notified MTG that there was an issue" with its red wine shallot sauce "because, according to [the] USDA, it contained a beef ingredient and was from France." (Doc. No. 1 at ¶ 16.) At the time of the notification, MTG had already distributed "hundreds" of cases of its red wine shallot sauce to gourmet food store retailers, and had "several thousand" cases in inventory. (*Id*.)

3

"On or around November 27, 2012," the USDA placed a hold on all inventory of the sauce in MTG's warehouse. (*Id*. ¶ 17.)

Approximately two weeks later (on December 12, 2012), the USDA ordered the recall of MTG's red wine shallot sauce and prohibited MTG from selling the sauce in the United States. According to the USDA, the recall was necessitated by the fact that federal regulations prohibit "any product from France containing beef, regardless of the beef's county of origin, to be imported into or sold in the United States." (*Id*. ¶ 18.) Following the announcement of the recall, MTG was able to convince the USDA to allow MTG to return the unused product in its warehouse to Potier in France. (*Id*. ¶ 19.)  As for the product already in distribution at the time of the recall, MTG was forced to recover the product from the various gourmet food stores and destroy the product under USDA observation. (*Id*. ¶ 20.)

According to the complaint, MTG attempted to work with Potier to develop an alternative red wine shallot sauce that did not contain beef. (*Id*. ¶ 22.) Toward that end, MTG shared some of its proprietary information with Potier. (*Id*.) Though it is unclear from the complaint, it would appear that Potier succeeded in developing a reformulated sauce that met USDA standards. However, after filling one order for the reformulated sauce, Potier "refused to fill MTG's order". (*Id*. ¶ 40.)

On September 6, 2013, MTG filed the present lawsuit, raising two claims for breach of contract. In the first count, MTG alleged that Potier breached the parties' agreement by failing to deliver a product that fully complied with USDA rules and regulations. (*Id*. ¶¶ 31, 34.) In the second count, MTG asserted that Potier's alleged

refusal to fill an order for the reformulated sauce constituted a further breach of the agreement. (*Id.* ¶ 41.)

MTG seeks compensatory and consequential damages, along with costs, expenses, and attorneys' fees. (*Id.* Prayer for Relief at 9.) Enumerated among the damages MTG claims it sustained as a result of Potier's alleged breach of the agreement and seeks to recover in this lawsuit are the following: the purchase price of the goods, lost profits from the sale of the red wine shallot sauce and other products, costs associated with transporting the recalled product back to Potier; damages relating to the destruction of certain product under USDA supervision, damages relating to the handling of regulatory and legal matters associated with the recall, loss of value of other products in the co-branded product line as a result of the recall of the red wine shallot sauce, and loss of company good will in the food industry and with current and potential customers. (*Id.* ¶¶ 36, 42.)

## II.  GOVERNING CASE LAW

### A.    *Standard of Review*

Motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) are generally analyzed under the same standard as motions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Mellentine v. Ameriquest Mortg. Co*., 515 F. App'x 419, 423 (6th Cir. 2013) (citing *EEOC v. J.H. Routh Packing Co*., 246 F.3d 850, 851 (6th Cir. 2001)). The Court must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citing *Meador v.*

*Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (citation omitted).

   *B. Contract Interpretation*

   "Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff v. Access Grp., Inc*., 524 F.3d 754, 763 (6th Cir. 2008) (citations omitted); *see Ohio Historical Soc'y v. Gen. Maint. & Eng'g Co*., 583 N.E.2d 340, 345 (Ohio Ct. App. 1989). It is the role of the court to discern the intent of the parties, which is "presumed to reside in the language they choose to use in their agreement." *Savedoff*, 524 F.3d at 763 (quoting *Graham v. Drydock Coal Co*., 667 N.E. 2d 949, 952 (Ohio 1996)); *see United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr*., 716 N.E.2d 1201, 1208 (Ohio Ct. App. 1998). "The Court must look to the plain language of the contract, and only go beyond the plain language of the agreement to determine the rights and obligations of the parties if it is ambiguous." *Airlink Commc'ns, Inc. v. Owl Wireless, LLC*, No. 3:10 CV 2296, 2011 WL 4376123, at *2 (N.D. Ohio Sept. 20, 2011) (internal citations omitted).

    "Contractual language is 'ambiguous' only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *Covington v. Lucia*, 784 N.E.2d 186, 190

6

(Ohio Ct. App. 2003) (citation omitted); *see Sec'y of USAF v. Commemorative Air Force*, 585 F.3d 895, 900 (6th Cir. 2009). When both parties offer "plausible interpretations of the agreement drawn from the contractual language itself [this] demonstrates that the provision is ambiguous." *Int'l Union UAW Local 91 v. Park-Ohio Indus., Inc*., 876 F.2d 894, at *6 (6th Cir. 1989) (table decision).

In determining whether contractual language is ambiguous, the contract "must be construed as a whole." *Tri-State Grp., Inc. v. Ohio Edison Co*., 782 N.E.2d 1240, 1246 (Ohio Ct. App. 2002) (internal citation and quotation marks omitted). Further, "courts should give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain." *Foster Wheeler Envirresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997) (internal citation and quotation marks omitted).

## III. DISCUSSION

Potier's dispositive motion seeks to limit the type of damages MTG may recover in this action. Relying on Section 4.1 of the agreement, which provides that "Potier, at its sole option and as MTG's sole remedy, will replace any of the Co-Branded Products . . . [or] issue a credit in favor MTG[,]" Potier insists that MTG's only remedy is a credit for the purchase price. (Doc. No. 9 at 80 at n.1.) Potier reinforces its position by highlighting the fact that Section 4.3 expressly prohibits the recovery of consequential or incidental damages. (*Id*. at 81.) Based on these contractual provisions, Potier argues that "virtually all of MTG's claims for damages should be dismissed[.]" (*Id*. at 79.)

It is permissible for parties to contractually limit the types of damages that can flow from a possible breach. *Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Prods. Inc.*, No. 2:02-CV-1288, 2007 WL 894833, at *28 (S.D. Ohio Mar. 22, 2007) ("While the U.C.C. provides a remedy for consequential damages, it also allows the parties to agree to limit the buyer's remedy.") Under Ohio Rev. Code § 1302.93(A)(1), "[t]he agreement may provide for remedies in addition to or in substitution for those provided [under the Code] and may limit or alter the measure of damages recoverable[.]" Pursuant to this section, "parties to a contract may agree to exclude incidental and consequential damages from the amount recoverable flowing from a breach." *Nat'l Much*, 2007 WL 894833, at *28.

A.    *Indemnification*

While not directly challenging the legality of the limitation contained in Section 4.3, MTG suggests that Section 4.3 does not apply. Relying on the indemnification clause in Section 13 of the agreement, MTG argues that it has sufficiently pled a claim for consequential and incidental damages. (Doc. No. 12 at 97, 101.) According to MTG, the indemnification language requiring Potier to hold harmless and defend MTG against any and all claims and damages constitutes an "express contractual promise by Potier to absorb the precise economic losses for which MTG is now seeking damages." (*Id*. at 101.)

There are several problems with MTG's position, not the least of which is that Section 13.5 expressly precludes the recovery of "special, indirect, consequential, punitive or incidental damages." (Doc. No. 1-3 at 26.) But even without clear language prohibiting consequential and incidental damages for indemnification, this section cannot

8

govern disputes between the parties because a more specific section governs such disputes. It is a well settled canon of contract construction that specific language prevails over general contract language. *See Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 903 (6th Cir. 2006) ("Under Ohio law, a specific provision controls over a general one.") (citation and quotation marks omitted). Here, Section 4 of the agreement specifically sets forth the representations made by Potier to MTG—including that the co-branded products would comply with all applicable laws—and the damages available if the products do not live up to the representations. Because there is a specific contract provision that addresses disputes between the parties over representations and warranties, MTG cannot rely on the more general indemnification provision that governs "any and all claims, loss, [and] damages . . . ."[1] (Doc. No. 1-3 at 25 [Agreement, Sec. 13.1].) *See, e.g., Aerel, S.R.L.*, 448 F.3d at 903 (specific provision covering post-termination commissions controlled over general contractual provision governing sales where the litigation was limited to post-termination commissions).

Moreover, the complaint makes clear that MTG is not seeking indemnification, but is, instead, relying on the representations made in Section 4 as a basis for its damages. (Doc. No. 1 at ¶¶ 12-13, 26-27, 31, 34.) After highlighting Potier's contractual duty to deliver a product that complied with all governmental laws and

---

[1] Potier also argues that the indemnification clauses in Section 13 relate only to claims brought by third-parties. (Doc. No. 13 at 168.) Of course, indemnity does not necessarily apply solely to third-party situations. *See Battelle Mem'l Inst. v. Nowsco Pipeline Servs., Inc.*, 56 F. Supp. 2d 944, 951 (S.D. Ohio 1999). Nonetheless, the conditions governing indemnification—including provisions affording the indemnifying party sole control over the defense of the claim and requiring the indemnified party to cooperate with the indemnifying party and not take any action contrary to the indemnifying party's interests—foreclose the possibility that Section 13 was meant to cover internal disputes between the parties. (*See* Doc. No. 1-3 at 26 [Agreement, Sections 13.3.2, 13.3.3, 13.3.4].)

regulations (*id*. ¶¶ 12-13, 26-27), MTG unequivocally alleges that its damages flow directly from Potier's failure to live up to that duty. (*Id*. ¶¶ 26-27.) By identifying the breach of warranties and representations set forth in Section 4 as the basis for its claims, MTG is limited to the damages available under this section.[2] Thus, if MTG is to justify its request for consequential and incidental damages, it must rely on Section 4.

        B.     *Exclusive Remedy Provision*

MTG offers two reasons why Section 4's limitations on available remedies do not foreclose the recovery of consequential and incidental damages. First, MTG insists that the exclusive remedy provision in Section 4.1 only applies in situations where the co-branded products manufactured by Potier fail to meet MTG's specifications. Alternatively, MTG argues that the exclusive remedy—replacement or a credit of the purchase price—fails its essential purpose of making MTG whole.

According to MTG, Section 4.1 creates "two distinct express warranties: one, that the products will comply with 'specifications provided by Potier to MTG' and, two, that the products will comply with 'all local, state and federal laws, regulations, ordinances, rules and procedures, including those of the United States FDA and USDA.'"

---

[2] MTG also argues that the damages it seeks "are *not* consequential or incidental damages and, therefore, the limitations provision is not applicable." (Doc. No. 12 at 97) (emphasis in original). Instead, MTG suggests that the damages it seeks are "primarily actual, direct, and *compensatory* damages" because "they flow directly—not indirectly—from the breach of contract . . . ." (*Id*. at 105, 106) (emphasis in original). While some of the requested damages—such as the cost of replacement and repair—may be categorized as direct, *see Mead Corp. v. McNally-Pittsburgh Mfg. Corp*., 654 F.2d 1197, 1209-10 n.17 (6th Cir. 1981), other damages—including lost profits, loss of good will and loss of on-going concern—are more often treated as consequential damages. *See Airlink Commc'ns, Inc.*, 2011 WL 4376123, at *3 (lost profits were consequential damages because they were contingent upon third-party contracts); *see, e.g., Agric. Servs. Ass'n, Inc. v. Ferry-Morse Seed Co., Inc*., 551 F.2d 1057, 1070 (6th Cir. 1977) (losses to good will considered consequential damages); *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co*., 537 N.E.2d 625, 629 (Ohio 1989) (lost profits treated as consequential damages). Because the Court cannot even determine whether MTG is properly limited to the recovery of direct damages, it need not, at this time, categorize the requested damages as direct or consequential.

(Doc. No. 12 at 107 [citing Agreement, Doc. No. 1-3 at 19].) MTG continues by arguing that the exclusive remedy of replacement or credit only applies to the first warranty. In support of this interpretation, MTG highlights language in Section 4.1 that provides that Potier "will replace any of the Co-Branded Products *which fail to meet the specifications due to defects*[.]"[3] (Doc. No. 103 at 19 [quoting Section 4.1, emphasis added by MTG].)

MTG's interpretation is reasonable. It is a guiding principle of contract law that the expression of one thing is the exclusion of another. *See Broad St. Energy Co. v. Endeavor Ohio, LLC*, 975 F. Supp. 2d 878, 890 (S.D. Ohio 2013) (Under Ohio law, the canon of "[e]xpressio unius est exclusio alterius" means that "if certain things are specified in a law, contract, or will, other things are impliedly excluded.") (citations and quotation marks omitted); *Nat'l Fire Ins. Co. v. Roofmaster Constr., Inc*., No. 04-CV-71142-DT, 2005 WL 1030326, at *10 (E.D. Mich. Apr. 28, 2005) ("The general principle of contract interpretation, *expressio unius est exclusio alterius*, holds that a specific mention of one thing implies an intent to exclude another.") By emphasizing that the exclusive remedy of replacement or credit is applicable where defects are due to a failure to meet design specifications, it follows that damages for other breaches not mentioned are not similarly limited.

Potier offers a competing interpretation. It rejects MTG's attempt to parse Section 4.1 into two separate warranties, noting that both representations are contained in the same sentence. It further emphasizes that replacement/credit is the only remedy

---

[3] Potier points out that MTG's quote of the agreement omits certain language relating to Potier's options to correct or replace non-conforming product. The Court finds that consideration of the omitted language does not change the analysis.

discussed in Section 4.1 and follows directly after the sentence setting forth what Potier was representing and warranting. (Doc. No. 13 at 165.) The Court finds that this interpretation is also reasonable. In addition to the rationale set forth by Potier, the same paragraph in Section 4.1 that provides for the remedy of replacement/credit also repeatedly speaks of a single warranty. When considered in concert with Section 4.3's exclusion of most other forms of damages, including consequential and incidental damages, Potier's interpretation is especially compelling.

At the very least, the Court finds that the contract may contain ambiguities that make it a poor candidate for resolution at this stage of the proceedings, where discovery has not taken place and the parties have not offered extrinsic evidence that might shed light on the parties' intent. *See Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 689 (E.D. Mich. 2012) ("A court should not choose between reasonable interpretations of ambiguous contract provisions when considering a motion to dismiss under Rule 12(b)(6).") (citation omitted); *see, e.g., N. Frozen Foods, Inc. v. Picciotti*, No. 95493, 2011 WL 1935816, at *3 (Ohio Ct. App. May 19, 2011) (ambiguities in contract precluded a determination of the intent of the parties pursuant to a motion for judgment on the pleadings); *see also Allason v. Gailey*, 939 N.E.2d 206, 212 (Ohio Ct. App. 2010) (holding that the trial court properly considered parol evidence where a contract term was susceptible to more than one reasonable interpretation). Because the Court finds that ambiguity in the underlying contract precludes the Court from granting judgment in favor of Potier on the enforceability of the exclusive remedy contract provision, the Court need not reach, at this time, MTG's alternative argument that the exclusive remedy fails its essential purpose.

12

**IV. CONCLUSION**

For all of the foregoing reasons, Potier's motion for judgment on the pleadings as to damages is denied. The Court shall schedule this matter for a Case Management Conference.

**IT IS SO ORDERED.**

Dated: August 26, 2014

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

13